ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| EDGAR FRANCISCO MORALES RAMÍREZ Y OTROS<br><br>Apelante<br><br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO COBIAN´S PLAZA<br><br>Apelada | **TA2025AP00310** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2023CV02254<br><br>Sobre: Cobro de Dinero; Ley de Condominios (Cuota de Mantenimiento Vencidas) |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 15 de octubre de 2025.

Comparece ante este foro el Sr. Edgar Francisco Morales Ramírez (señor Morales o "el apelante") mediante el recurso de *Apelación* presentado el 3 de septiembre de 2025, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 24 de abril de 2025. En el aludido dictamen, el foro de instancia declaró *Con Lugar* la *Demanda* presentada por el Consejo de Titulares del Condominio Cobian's Plaza y *Sin Lugar* la *Reconvención* presentada por el señor Morales, imponiéndole a este último el pago de $70,681.85 en concepto de cuotas de mantenimiento, seguro, intereses y penalidades; y $500.00 de honorarios por temeridad. Por otro lado, el señor Morales nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 4 de agosto de 2025. En el referido dictamen, el foro primario declaró *No Ha*

*Lugar* la *Moción de Reconsideración* presentada por el apelante.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** y **MODIFICAMOS** el dictamen apelado.

## I.

El 13 de marzo de 2023, el Consejo de Titulares del Condominio Cobian's Plaza (Consejo de Titulares o "parte apelada") presentó una *Demanda* sobre cobro de dinero por cuotas de mantenimiento vencidas contra el señor Morales.[1] En esencia, alegó que el señor Morales era dueño del Apartamento número 2104 o PH-4 del Condominio Cobian's Plaza. Adujo que, adeudaba la suma de $38,740.06 por concepto de pagos no devengados de mantenimiento vencidos, derramas, seguros, intereses y recargos legales correspondientes. Asimismo, dispuso que a pesar de realizar gestiones con el apelante para que pagara, no había satisfecho la cantidad adeuda, vencida, líquida y exigible. Por tal razón, solicitó el pago de la suma de $38,740.06, más el embargo preventivo del Apartamento número 2104.

En respuesta, el 10 de junio de 2023, el señor Morales presentó su *Contestación a la Demanda y Reconvención*.[2] Mediante la cual, realizó sus alegaciones responsivas, en específico, y referente a su dirección, expresó que el apartamento número 2104 no era su única dirección conocida por la parte apelada, pues era dueño de otras unidades en el Condominio Cobian's Plaza. Arguyó que no adeudaba al Consejo de Titulares cantidades por cargos vencidos o por mora y de existir

---

[1] Demanda, entrada núm. 1 del caso núm. SJ2023CV02254, en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Contestación a la Demanda y Reconvención, entrada núm. 12 del caso núm. SJ2023CV02254, en el SUMAC.

alguno, los apelados mantenían en su poder dinero que le pertenecía, lo cual podría cubrirlas. Entre las defensas afirmativas que levantó, estaban las figuras de pago y compensación, pues alegó que el Consejo de Titulares retenía el pago realizado por el seguro MAPFRE hacía este por los daños sufridos debido al paso del Huracán María.

En su *Reconvención*, adujo que el 29 de noviembre de 2018, el Consejo de Titulares aprobó la oferta de indemnización y pago de MAPFRE bajo la póliza 1600178002704. Arguyó que, como parte de la oferta de indemnización y pago, la parte apelada retenía la cantidad de $38,621.00 por el apartamento número 2104 y $3,166.59 por el apartamento número 1104 ambos siendo parte de sus propiedades. Alegó que, el Consejo de Titulares se había negado a desembolsar los fondos, pues él se había negado a firmar un relevo. A su vez, planteó que no estaba obligado a firmar el aludido relevo, puesto que, una vez fijada la cuantía de una pérdida bajo una póliza, el beneficiario, aunque no estuviese de acuerdo con la cuantía podía recibirla. Añadió que, debido a la negativa del Consejo de Titulares al desembolsar el dinero adeudado, se vio imposibilitado de realizar las reparaciones necesarias al apartamento 2104. Por tal razón, solicitó al tribunal que impusiera a la parte apelada el pago de $100,000.00 por los daños causados ante la negativa de entregar el dinero de la póliza. Además, de $250,000.00 por angustias mentales y que se declarara no ha lugar a la reclamación presentada por el Consejo de Titulares.

Luego de varios trámites procesales, el 27 de enero de 2025, el Consejo de Titulares presentó una *Moción*

*Solicitando se dicte Sentencia Sumaria*.[3] En esencia, estableció doce (12) hechos sobre los cuales adujo que no existía controversia, por lo que, solicitó se dictara sentencia por la vía sumaria. Alegó que, había quedado evidenciado que el señor Morales había incumplido con los pagos de las cuotas de mantenimiento, seguro y penalidades de los apartamentos número 1104, 2104 y 1405, adeudando la cantidad total de $70,681.85. Alegó que la razón por la cual retuvo el dinero perteneciente a la compensación por pérdida bajo la póliza MAPFRE del apelante sobre los apartamentos número 2104 y 1104, fue debido a que el propio apelante se negó a firmar un relevo. Expresó que, la creación del aludido relevo había sido para contar con evidencia de las gestiones fiscales y administrativas del Consejo. No obstante, adujo que, sobre los apartamentos número 1107 y 1405, la parte apelante no presentó reclamo alguno y firmó de manera libre y voluntaria el relevo, recibiendo del mismo modo su compensación.

Del mismo modo, el Consejo de Titulares, arguyó que la reconvención presentada por el señor Morales se debía desestimar pues su causa de acción se encontraba prescrita. Plantearon que, el 29 de noviembre de 2018, fue aprobada la oferta de *Indemnización y Pago* de MAPFRE bajo la póliza 1600178002704 y la reconvención presentada por el demandado fue realizada el 10 de junio de 2023. Adujo que, el apelante tenía 30 días o 2 años para impugnar la oferta de *Indemnización y Pago* de MAPFRE ante el Departamento de Asuntos del Consumidor (DACo) y no lo hizo, por lo que, su causa de acción estaba

---

[3] Moción Solicitando se Dicte Sentencia Sumaria, entrada núm. 62 del caso núm. SJ2023CV02254, en el SUMAC.

prescrita. Finalmente, mencionó que el apelante debió ser sancionado, pues no cumplió con la obligación de pagar la cuota de mantenimiento establecida en el Artículo 59 de la Ley Núm. 129-2020, *Ley de Condominios de Puerto Rico*, 31 LPRA sec.1923d.

En respuesta, el 17 de febrero de 2025, el señor Morales presentó su *Moción en Oposición a Solicitud de Sentencia Sumaria*.[4] En primer lugar, esbozó que la *Demanda* presentada por la parte apelada era en torno a la deuda del apartamento número 2104 y no sobre las alegadas deudas de otros apartamentos. A su vez, reiteró su postura en que el Consejo de Titulares retenía de manera ilegal la cantidad de $41,787.59 en concepto de indemnización a los apartamentos 1104 y 2104. Alegó que, no procedía se dictara sentencia sumaria a favor de la parte apelada pues existían hechos en controversia. Adujo que firmó los relevos de responsabilidad correspondientes a los apartamentos número 1107 y 1405, pues estaba de acuerdo con los montos asignados por MAPFRE a estos. Sin embargo, que no estaba de acuerdo que le cobrasen los interés y penalidades que fueron condonadas a todos los titulares tras el paso del Huracán María, pues de la *Demanda* surgía que se intentó cobrar intereses y penalidades a partir del 2017 hasta el mes de junio de 2021.

El 13 de marzo de 2025 la parte demandante presentó su *Dúplica a Moción en Oposición a Solicitud de Sentencia Sumaria*.[5]

---

[4] Moción en Oposición a Solicitud de Sentencia Sumaria, entrada núm. 63 del caso núm. SJ2023CV02254, en el SUMAC.
[5] Dúplica a Moción en Oposición a Solicitud de Sentencia Sumaria, entrada núm. 65 del caso núm. SJ2023CV02254, en el SUMAC.

Evaluadas las mociones presentadas, el 23 de abril de 2025, el foro primario emitió una *Sentencia* mediante la cual declaró *Con Lugar* la *Demanda* presentada por el Consejo de Titulares y *Sin Lugar* la *Reconvención* presentada por el señor Morales, imponiéndole a este último el pago de $70,681.85 en concepto de cuotas de mantenimiento, seguro, intereses y penalidades.[6] El foro primario emitió las siguientes determinaciones de hechos incontrovertidos:

1. El Condominio Cobian´s Plaza fue sometido al Régimen de Propiedad Horizontal por virtud de la escritura número 289, otorgada el 14 de noviembre de 1975 ante el notario Orlin Goble. Entrada 62-1.

2. Morales es titular, hoy día, de los apartamentos 2104, 1405 y 1104. Hecho Estipulado.

3. El 29 de noviembre de 2018, el Consejo aprobó la oferta de indemnización y pago de la Aseguradora MAPFRE, donde se asignó una cantidad de dinero, por daños ocasionados a los apartamentos del Demandado tras el paso del huracán María. Hecho Estipulado.

4. Para el desembolso de las partidas asignadas a cada unidad, el Consejo requirió la firma de un relevo. Entrada 63-4, Contestación a los Interrogatorios 22, 23, 26.

5. El 13 de diciembre de 2018, Morales firmó el acuerdo y relevo que le fue presentado por el Consejo para recibir el cheque por la indemnización de seguro relacionada al apartamento 1107, que a esa fecha pertenecía a Morales. Entrada 62-2.

6. El 13 de diciembre de 2018, el demandado firmó el acuerdo y relevo que le fue presentado por el Consejo, para recibir el cheque por la indemnización del seguro relacionada a su apartamento 1405 a raíz del paso del Huracán María. Entrada 62-3.

7. Morales se negó a firmar los relevos relacionados a las partidas de indemnización correspondientes a los Apartamentos 1104 y 2104, por lo cual el Consejo no le ha desembolsado los fondos de

---

[6] *Sentencia*, entrada núm. 66 del caso núm. SJ2023CV02254, en el SUMAC.

$3,166.59 y $38,621.00, respectivamente, para un total de $41,787.59. Entada 63-4 y 63-5 (solicitando desembolso en concepto de adelanto sin perjuicio de su reclamación contra Mapfre y el Consejo). Entrada 63-1.

8. Morales ya no reside en el apartamento 2104, debido a que desde los estragos del Huracán María el apartamento no está habitable. Entrada 63-1.

9. El 3 de diciembre de 2019, el demandado notificó a la administradora del condominio: "Favor de hacerme entrega de los cheques correspondientes a los aptos. PH-4 y 1104. No firmaré Relevo alguno ya que estoy en Proceso Legal contra MAPHRE por la cuantía." Entrada 62-3.

10. El 18 de julio de 2022, al demandado, por medio de su representante legal, se le reclamo de pago de lo adeudado al demandante Consejo. Hecho Estipulado.

11. El demandado ha incumplido con su responsabilidad de pagar la cuota de mantenimiento, cuota de seguro y penalidades por el apartamento 1104, adeudando al mes de enero de 2025 la cantidad de $3,600.28. Entrada 62-6.

12. El demandado ha incumplido con su responsabilidad de pagar la cuota de mantenimiento, cuota de seguro y penalidades por el apartamento 2104, adeudando al mes de enero de 2025 la cantidad de $64,143.99. Entrada 62-7.

13. El demandado ha incumplido con su responsabilidad de pagar la cuota de mantenimiento, cuota de seguro y penalidades por el apartamento 1405, adeudando al mes de enero de 2025 la cantidad de $2,937.58. Entrada 62-8.

14. El Demandado ha incumplido con su responsabilidad de pagar la cuota de mantenimiento, cuota de seguro y penalidades por los apartamentos, 1104, 2104 y 1405, adeudando al mes de enero de 2025, la cantidad total de $70,681.85.

En esencia, el Tribunal de Primera Instancia resolvió que la impugnación sobre la determinación del Consejo de Titulares para requerir un relevo previo a la entrega de los cheques de desembolsos aplicables a los apartamentos, presentada por el señor Morales en la reconvención estaba prescrita, debido a que, conforme

dispone el Artículo 65 de la Ley Núm.129-2020, 31 LPRA sec.1923j, el señor Morales tenía un plazo de 30 días a 2 años para impugnarlo ante el DACo, lo cual no ocurrió. Del mismo modo, el foro de instancia resolvió que no procedía la causa de acción sobre daños y perjuicios presentadas por el apelante en su reconvención debido a que este último no logró demostrar cuáles fueron los aludidos daños sufridos a consecuencia de no haber recibido la indemnización retenida por el Consejo de Titulares. Por otro lado, concluyó que la parte apelada logró demostrar que el señor Morales adeudaba la cantidad $70,681.85 por concepto de cuota de mantenimiento, seguro, intereses y penalidades conforme al Artículo 59 de la Ley Núm.129-2020, *supra*. Finalmente, determinó que la posición del señor Morales sobre que no pagó las cuotas de mantenimiento ante el Consejo de Titulares, pues estos le debían compensar la cantidad de $41,787.59 que tenían retenidos cuando se presentó la *Demanda,* no era temeraria. No obstante, resolvió que debido a que el apelante no continuó los pagos de las cuotas una vez se consumó el dinero que estaba retenido, se denotó pretexto y temeridad litigiosa por lo que le impuso una sanción de $500.00 en honorarios por temeridad.

En desacuerdo, el 9 de mayo de 2025, el señor Morales presentó una *Moción en Reconsideración*.[7] La aludida moción fue declarada *No Ha Lugar* por el Tribunal de Primera Instancia mediante una *Resolución* notificada el 4 de agosto de 2025.

---

[7] Moción en Reconsideración, entrada núm. 68 del caso núm. SJ2023CV02254, en el SUMAC.

Aún inconforme, el 3 de septiembre de 2025, el apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> ERRÓ EL TPI AL RECHAZAR LA DEFENSA DE COMPENSACIÓN Y AL IMPUTAR TEMERIDAD SOBRE LA PREMISA ERRÓNEA DE QUE SE "CONSUMIERON" LOS $41,787.59 RETENIDOS.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA EN EL CÓMPUTO DE LA DEUDA DESCANSANDO EN PARTIDAS CORRESPONDIENTES A OTRAS UNIDADES CUANDO LA DEMANDA ERA EN CUANTO A LA UNIDAD 2104.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA CUANDO EXISTÍAN CONTROVERSIAS MATERIALES EN DISPUTA.

El 3 de octubre de 2025, el Consejo de Titulares presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, procedemos a resolver el recurso de epígrafe. Veamos.

## II.

## -A-

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la adjudicación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. *Rodríguez García v. UCA*, 200 DPR 929 (2018). Este mecanismo, está instituido en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, y su función esencial es el permitir que, en aquellos litigios de naturaleza civil, una parte pueda mostrar, previo al juicio, que tras las partes contar con la evidencia que ha sido debidamente descubierta, no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar

esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769 (2016).

La solicitud de sentencia sumaria puede ser interpuesta por cualquiera de las partes que solicite un remedio por medio de una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2. Por consiguiente, se dictará sentencia sumaria, si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demostrasen que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que; como cuestión de derecho, procediese hacerlo. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); SLG *Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

En cuanto a los hechos esenciales y pertinentes a los que se refieren el precitado cuerpo de Reglas, es conocimiento que estos son los que se conocen como hechos materiales. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. Por ello, la controversia deberá ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. Regla 36.1 de Procedimiento Civil, 32 LPRA

Ap. V, R. 36.1; *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

En lo particular, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento a seguir por las partes al momento de solicitarle al tribunal que dicte sentencia sumariamente a su favor. A esos efectos, la mencionada regla establece que una solicitud a su amparo, deberá incluir lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y (6) el remedio que debe concederse. Regla 36.3(a) (1-6) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a) (1-6).

Por otro lado, la parte que se oponga a que se dicte sentencia sumaria deberá controvertir la prueba presentada por la parte que la solicita. Para ello, deberá presentar su contestación a la moción de sentencia sumaria dentro del término de veinte (20) días de su notificación. Dicho escrito, además de cumplir con los mismos requisitos con los que tiene que cumplir el proponente, deberá contener:

[…]

(b) […]

(2) [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. Regla 36.3 (b) (1-4)), 32 LPRA Ap. V, R. 36.3(b) (1-4).

Ahora bien, cuando se presente una moción de sentencia sumaria y se sostenga en la forma que establece la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones; sino que dicha parte estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra, si procede. Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c). Por tanto, el oponente deberá controvertir la prueba presentada con evidencia sustancial y no podrá simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 66 (2018).

Quiere decir que, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Ramos Pérez v. Univisión*, supra, pág. 215. Si el oponente no controvierte los hechos propuestos de la forma en que lo requiere la Regla aplicable, tales hechos se podrán considerar como admitidos y se dictará la sentencia en su contra, si procediese. *Roldán Flores v. M. Cuebas, Inc.,* supra. De igual forma, si la parte contraria no presenta su contestación a la sentencia sumaria en el término reglamentario provisto, se entenderá que la moción de sentencia sumaria quedó sometida para la consideración del tribunal. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, Regla 36.3.

Por último, es preciso recordar que nuestro Máximo Foro ha dispuesto que, como Tribunal de Apelaciones, nos encontramos en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 122 (2015). A tales efectos, nuestra revisión será una *de novo* y el análisis que realizaremos se regirá por las disposiciones contenidas en la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.

Por ello, de entender que procede revocar una sentencia sumaria, debemos indicar cuáles hechos esenciales y pertinentes están en controversia, e igualmente decir cuáles están incontrovertidos. Por el contrario, si encontramos que los hechos materiales realmente están incontrovertidos, nuestra revisión se

limitará a revisar *de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el derecho o no. *Íd*, págs. 118-119.

-B-

La parte promovente de una acción de cobro de dinero sólo tiene que demostrar la existencia de una deuda válida, que la misma no se ha pagado, que es la persona o entidad acreedora, y que la persona o entidad demandada es su deudora. *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986). Asimismo, deberá probar que la deuda que reclama es líquida, vencida y exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993).

Una deuda se considera "líquida" cuando la suma de dinero que se adeuda es "cierta" y "determinada". Ramos y otros v. Colón y otros, supra, citando a M.A. Del Arco Torres y M. Pons González, Diccionario de Derecho Civil, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168; Freeman v. Tribunal Superior, 92 DPR 1, 25 (1965); véase, además, Rivera Rodríguez & Co. v. Lee Stowell, etc., supra. Por otra parte, la deuda es "exigible" cuando está vencida y, por lo tanto, puede demandarse el cumplimiento de la obligación. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

Una vez probado que existe una obligación de pago, la prueba de extinción de una obligación le corresponde al que se opone. Véanse, *Cochón v. Correa*, 32 DPR 734 (1924); Art. 1168 del Código Civil, 31 LPRA sec. 3261.

-C-

La compensación ocurre cuando dos personas, por derecho propio, son recíprocamente acreedoras y deudoras entre sí. Artículo 1144 del Código Civil de Puerto Rico 2020 (Código Civil), 31 LPRA sec. 9221. El efecto que tiene la compensación es extinguir una o más deudas "…en la cantidad concurrente, aunque no tengan conocimiento de ella ni el acreedor ni el deudor". *Id.* El Tribunal Supremo ha expresado que bajo la figura de compensación "[c]ada uno de los acreedores se paga reteniendo lo que debe". *Ramos v. Caparra Dairy, Inc.*, 116 DPR 60, 65 (1985).

El Artículo 1145 del Código Civil, 31 LPRA 9222, establece los requisitos para que se configure la compensación. En específico, el artículo establece que:

(a) cuando cada una de las personas obligadas lo está principalmente, y es, a la vez, acreedora principal de la otra;

(b) ambas deudas consisten en una cantidad de dinero o, si las cosas debidas son fungibles, de la misma especie y la misma calidad, cuando esta se ha designado;

(c) ambas deudas son líquidas, vencidas y exigibles;

(d) sobre ninguna de ellas hay suspensión de pago o contienda promovida por terceras personas y notificada oportunamente al deudor;

y (e) no existe una prohibición legal.

-D-

El Artículo 2 de la *Ley de Condominios de Puerto Rico* (Ley de Condominios), Ley Núm. 129-2020, 31 LPRA sec. 1921a, establece que, la ley se aprobó con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad

Horizontal. A su vez, provee mecanismos para los conflictos inevitables que surgen del *modus vivendi* bajo un régimen de propiedad horizontal. *Srio. DACo v. J. Condóminos C. Martí*, 121 DPR 807, 814 (1988). Además, dispone la creación de un marco organizacional de un gobierno interno y canalización de los problemas de la vida comunitaria. *Íd.*, pág. 815. La ley detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. *Íd.*

Conforme el Artículo 59 de la Ley de Condominios, 31 LPRA sec. 1923d, los titulares de los apartamentos del inmueble sometido al Régimen de Propiedad Horizontal vienen obligados a contribuir, de manera proporcional, a los gastos de administración, conservación y reparación de los elementos comunes generales del inmueble, los elementos comunes limitados y los que sean legitimante acordados. El precitado artículo establece que:

> En aquellos casos donde un condominio comparta el uso de áreas o instalaciones de acceso, seguridad, recreativas, educativas, de servicios o de otro tipo para que sus titulares y residentes las usen en común con otros condominios, urbanizaciones y/u otros proyectos o áreas de desarrollo, el Consejo de Titulares del referido condominio contribuirá a los gastos de operación, mantenimiento, seguridad, reparación, pago de utilidades y servicios, seguros y otros relacionadas con dichas áreas e instalaciones, según las disposiciones que se establezcan para ello en la escritura matriz del condominio[.]…
> *Íd.*

A raíz de esta disposición, ningún titular podrá librarse de contribuir a los gastos antes mencionados independientemente de si renunció al uso o disfrute de

los elementos comunes, si abandonó la unidad que le pertenezca, si presentó una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de Directores por hechos relacionados a la administración o el mantenimiento de las áreas comunes, excepto cuando el tribunal o organismo administrativo así lo autorice. *Íd.*

Del mismo modo, el Artículo 59 de la Ley de Condominios, *supra*, faculta a la administración del inmueble, en las instancias en las cuales un titular no contribuya a los gastos comunes, a cobrar una penalidad del diez por ciento de la cuota que no ha sido satisfecha si transcurren quince días del vencimiento de la mensualidad. *Íd.* Si el incumplimiento por parte del titular excede de tres o más plazos, se podrá imponer una penalidad adicional equivalente al uno por ciento mensual del total adeudado. *Íd.*

Por otro lado, los Artículos 65 y 66 de la Ley de Condominios, así como la Regla 23 del Reglamento de Condominios, Reglamento Núm. 9386 de 6 de junio de 2022, conceden jurisdicción primaria y exclusiva al DACo para conocer y adjudicar acciones de impugnación que radiquen los titulares de un condominio en que haya al menos una unidad destinada a vivienda contra los acuerdos, omisiones, o actuaciones de la Junta de Directores, del administrador interino, del presidente y el secretario, concernientes a la administración del inmueble y su escritura matriz y reglamento. Ley Núm. 129-2020, 31 LPRA secs. 1923j-1923k; Reglamento de Condominios, Reglamento Núm. 9386 de 6 de junio de 2022.

Así pues, el Artículo 65 de la Ley de Condominios establece que estos acuerdos, omisiones, o actuaciones

podrán ser impugnados por los titulares en los siguientes supuestos:

> a. cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>
> b. cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> c. cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra. Art. 65 de la Ley Núm. 129-2020, *supra.*

Sobre el término disponible para el ejercicio de esta acción ante el DACo, el Artículo 65 dispone lo siguiente:

> **Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo,** si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.
>
> **En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años.** El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley. (Énfasis Nuestro) *Art. 65 de la Ley Núm. 129-2020, supra.*

**-E-**

La Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d), faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado.

Una vez un tribunal determina que se ha incurrido en temeridad, está obligado a imponer a la parte que así haya actuado el pago de cierta cantidad de dinero en concepto de honorarios de abogado. A tal fin, la Regla 44.1 (d) de Procedimiento Civil, supra, dispone como sigue:

> (d) Honorarios de abogado - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

El concepto de temeridad es uno amplio. *Torres Montalvo v. García Padilla*, 194 DPR 760 (2016). La temeridad constituye aquel patrón de conducta que lleva a una de las partes a incurrir en los gastos de un litigio cuya controversia pudo haberse resuelto fuera de los tribunales. *Blás v. Hosp. Guadalupe*, 146 DPR 267 (1998); *Torres Ortiz v. ELA*, 136 DPR 556 (1994); *Elba ABM v. UPR*, 125 DPR 294 (1990). Una parte ha incurrido en temeridad cuando está presente alguna de las siguientes circunstancias: 1) contestar una demanda y negar responsabilidad total; 2) defenderse injustificadamente de la acción en su contra; 3) creer que la cantidad reclamada es exagerada y que tal sea el único motivo por el cual se opone a las alegaciones del demandante, pudiendo limitar la controversia a la fijación de la correspondiente cuantía; 4) incurrir en un litigio del cual prima facie se desprende su

responsabilidad; y, 5) negar un hecho cuya veracidad conste. *Blás v. Hosp. Guadalupe*, *supra*; *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713 (1987).

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos y con ello le ha causado innecesariamente molestias e inconvenientes. *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). Persigue imponer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Montalvo v. García Padilla*, *supra*, citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010).

En fin, la temeridad es una conducta que afecta el buen funcionamiento de los tribunales y la administración de la justicia. *Montalvo v. García Padilla*, *supra*. La imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1 de Procedimiento Civil, *supra*, supone que el tribunal haga una determinación de temeridad.

El juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor. Ello, mediante el ejercicio de su sano juicio. Así, la determinación que en su día emita sólo será objeto de revisión si ha mediado abuso de discreción en el ejercicio de su ministerio. *Colón Santos v. Coop. Seg. Múlt. PR*, 173 DPR 170 (2008); *Blás v. Hosp.*

*Guadalupe*, *supra*; *Fernández v. San Juan Cement Co.*, *supra*.

### III.

Mediante el presente recurso la parte apelante nos solicita que revoquemos la *Sentencia* emitida el 23 de abril de 2025 por el Tribunal de Primera Instancia y la *Resolución* emitida el 4 de agosto de 2025. Mediante la cual, declaró *Con Lugar* la *Demanda* instada por el Consejo de Titulares y *Sin Lugar* la *Reconvención* del señor Morales, condenándolo a pagar $70,681.85, cuya suma acumula intereses a razón de la tasa legal (8.75%) a partir de la notificación de esta sentencia hasta su saldo. A su vez, le impuso honorarios por temeridad por la cuantía de $500.00, más costas.

En el caso de autos, el apelante planteó tres señalamientos de error. A continuación, comenzamos examinando el tercer señalamiento de error, dado que, como foro apelativo debemos examinar, si la solicitud de remedio sumario, así como su oposición cumplen con los requisitos de forma que establece la Regla 36 de Procedimiento Civil, *supra*. Por lo tanto, luego de revisar la moción de sentencia sumaria instada por el Consejo de Titulares, como su oposición, este Foro concluye que los escritos cumplieron con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*.

A su vez, retomando la función *de novo* que nos corresponde asumir al verificar la moción de sentencia sumaria que el foro primario tuvo ante sí, acogemos como hechos incontrovertidos las determinaciones de hechos formuladas por el foro primario en el dictamen apelado con excepción de las determinaciones número 11, 13 y 14.

Por consiguiente, hacemos formar las restantes determinaciones de hechos parte de la presente determinación. Sin embargo, no acogemos las determinaciones de hechos número 11, 13 y 14, en la medida en que se refieren a las alegadas deudas correspondientes a apartamentos que no fueron parte de la *Demanda*.

Siguiendo la misma línea, en el segundo señalamiento de error, la parte apelante alega que incidió el foro primario en el cómputo de la deuda descansando en partidas correspondientes a otras unidades cuando la *Demanda* era en cuanto a la unidad número 2104.

Según surge del expediente, la parte apelada presentó una *Demanda* sobre cobro de dinero por cuotas de mantenimiento vencidas del apartamento **número 2104**.[8] Por su lado, el apelante realizó sus alegaciones responsivas y presentó una *Reconvención,* en la cual planteó que el apartamento número 2104 no era su única dirección conocida por la parte apelada, pues era dueño de otras unidades en el Condominio Cobian's Plaza, entre ellas del apartamento número 1104.[9] A su vez, adujo en su reconvención que, como parte de la oferta de indemnización y pago, la apelada retenía la cantidad de $38,621.00 por el apartamento número 2104 y $3,166.59 por el apartamento número 1104 ambos siendo de su propiedad.

De una lectura de las alegaciones formuladas por las partes, las propiedades por las cuales existía una

---

[8] Véase, *Demanda*, entrada núm. 1 del caso núm. SJ2023CV02254, en el SUMAC.
[9] Véase, *Contestación a la Demanda y Reconvención*, entrada núm. 12 del caso núm. SJ2023CV02254, en el SUMAC.

controversia eran las unidades número 2104 y 1104. Sin embargo, el apartamento número 1104 fue mencionado por el apelante, solamente con el propósito de reclamar el seguro. Mientras que, el apartamento número 2104 fue el único por el cual el Consejo de Titulares presentó una *Certificación de Deuda*.

Por lo que, incidió el foro primario al emitir una *Sentencia* en la cual formuló determinaciones de hecho haciendo referencia a una alegada deuda por los apartamentos número 1104 y 1405. Sobre dichos apartamentos, la parte apelada no realizó alegaciones de deuda, ni solicitó enmendar su demanda para incluirlas. Consecuentemente, el foro primario estaba impedido de sumar a la cantidad final adeudada, la supuesta deuda de $3,600.28 por el apartamento número 1104, y $2,937.58 por la unidad número 1405. Por ello, la responsabilidad del apelante de pagar la cuota de mantenimiento, seguro y penalidad por el apartamento número 2104, adeudado al mes de enero de 2025, debía ser por la cantidad total de **$64,143.99.**

Finalmente, el señor Morales alega que incidió el foro primario al rechazar la defensa de compensación e imputarle temeridad sobre la premisa errónea sobre que se "consumieron" los $41,787.59 retenidos por la parte apelada. No le asiste razón. Veamos.

En nuestro ordenamiento jurídico, la figura de la compensación ocurre cuando dos personas, por derecho propio, son recíprocamente acreedoras y deudoras entre sí. El efecto que tiene la compensación es extinguir una o más deudas en la cantidad concurrente, aunque no tengan conocimiento de ella ni el acreedor ni el deudor.

De la misma forma, el Artículo 59 de la Ley de Condominios, *supra*, establece que los titulares de los apartamentos del inmueble sometido al Régimen de Propiedad Horizontal vienen obligados a contribuir, de manera proporcional, a los gastos de administración, conservación y reparación de los elementos comunes generales del inmueble, los elementos comunes limitados y los que sean legitimante acordados. A raíz de esta disposición, ningún titular podrá librarse de contribuir a los gastos antes mencionados, independientemente de si renunció al uso o disfrute de los elementos comunes, si abandonó la unidad que le pertenezca, si presentó una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de Directores por hechos relacionados a la administración o el mantenimiento de las áreas comunes, excepto cuando el tribunal o organismo administrativo así lo autorice.

Por otro lado, la temeridad constituye aquel patrón de conducta que lleva a una de las partes a incurrir en los gastos de un litigio cuya controversia pudo haberse resuelto fuera de los tribunales. El juzgador de los hechos tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, mediante el ejercicio de su sano juicio. Así, la determinación que en su día emita sólo será objeto de revisión si ha mediado abuso de discreción en el ejercicio de su ministerio.

En el caso ante nuestra consideración, el foro primario falló en contra del apelante concluyendo que no había realizado los pagos de la cuota de mantenimiento, seguro, intereses y penalidades, conforme dispone el

Artículo 59 de la Ley de Condominios, *supra*.[10] A su vez, concluyó que si bien era cierto que al momento de la presentación de la *Demanda* la posición del apelante no era temeraria, luego de consumidos los $41,787.59 y debido a que el apelante no continuó realizando los pagos adeudados, quedó denotada la temeridad litigiosa del señor Morales.

Por consiguiente, concluimos que no incidió el Tribunal de Primera Instancia, puesto que, después de presentada la reclamación y luego de haberse consumido los $41,787.59, el apelante continuó incumpliendo con los pagos de la cuota de mantenimiento, seguro, intereses y penalidades conforme lo requiere el Artículo 59 de la Ley de Condominios, *supra*, demostrando a su vez pretexto y temeridad litigiosa.

### IV.

Por los fundamentos que nos anteceden, **CONFIRMAMOS** y **MODIFICAMOS** el dictamen apelado, a los fines de reducir a **$64,143.99** la cantidad total de la deuda al mes de enero de 2025 por el apartamento 2104.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[10] Véase, *Sentencia*, entrada núm. 66 del caso núm. SJ2023CV02254, en el SUMAC.